[No. 3462.]

## J. F. HOLDEN *v.* THE STATE.

1. FALSE PACKING — INFORMATIONS — SURPLUSAGE.— After charging the appellant and others with falsely packing a bale of cotton, with intent to defraud, the information alleged that B., one of the defendants, sold the falsely packed bale, with intent to defraud. The defense excepted to the information as duplicitous and uncertain, and the exception was sustained to so much of the information as alleged a sale of the bale by B., but was overruled as to the remainder. *Held* that the ruling was correct. Article 470 of the Penal Code defines two offenses, and one of them, viz., the false packing, was sufficiently charged by the allegations of the information remaining after the exception was sustained to so much of it as alleged a sale of the falsely packed bale. The name of the person to be defrauded need not be alleged. See the opinion for the said article of the Penal Code, and for the charging allegations of the information.

2. Evidence — Admissions of Conspirators.— In general the admissions or declarations of a confederate of the defendant on trial are not evidence against him if they were made after the consummation of the unlawful enterprise; but such admissions or declarations are evidence against the party on trial if he was present and acquiesced in them, even after the lapse of some two months since the consummation of the offense and prior to the commencement of the prosecution. See this case in illustration.

3. Fact Case.— See evidence *held* sufficient to sustain a conviction for the false packing of a bale of cotton, with intent to defraud.

Appeal from the County Court of Wise. Tried below before the Hon. W. W. Brady.

The opinion of this court sets out the charging allegations of the information, italicizing the portion to which the defendant's exception was sustained. A fine of $20 was the punishment imposed on the appellant by the verdict of the jury.

Z. T. Bobo, for the State, testified that on October 20, 1884, he was clerking for W. J. Rogers at Rhome in Wise county, Texas, and on that day bought for him from D. A. Bridges a bale of cotton weighing five hundred and forty pounds, at eight and a quarter cents per pound. Witness sampled it on the edge, and found it to sample about "middling." It was marked D. A. B. in blue ink. Witness put Rogers's mark on it, and numbered it 110, that being the number purchased upon the order he was then filling. It was thrown off of the wagon to the ground, and lay where it was thrown until about December 13, 1884. Three or four weeks after the bale was bought, Mr. Smith discovered bad cotton in it, and rejected it from the lot. Witness examined it, and dug into the end of it with his cotton hook, and in the centre of it he found rotten cotton, moats and trash. On December 13, 1884, the bale was opened in the presence of the witness and several others. Neither the appellant nor his co-defendants were present when the bale was opened, and witness could not say that any of them ever saw the bale after it was opened. The top and bottom of the bale was cotton like the sample taken from it by the witness when he bought it. In the middle of the bale there were moats, trash, and rotten, soiled and yellow cotton, mixed together, and constituting, according to the witness's estimate, a half or a third of the bale, valueless as cotton.

S. Bobo, A. Wilmuth, W. Morris and R. T. Smith, witnesses for the State, testified that they were present when the bale was opened, and examined it. The top, bottom and sides of the bale were lined with good cotton. The middle was soiled and rotten, with seed,

trash and moats mixed in with some good cotton, and had no value, being neither marketable nor merchantable. It had the appearance of having been "water-packed," and, after heating and rotting, of having been unpacked, dried, and then repacked in the condition found when it was opened. The good cotton in the bale graded as "middling," and was worth eight and a quarter cents per pound. Cotton is a commodity usually sold by weight. The witness Smith stated that he sampled the bale three or four weeks after Rogers bought it, and by gouging into it found the inferior contents, and therefore rejected it from the lot for which it was purchased.

Witnesses Chenoweth and Morris, for the State, testified that they were acquainted with the appellant and his co-defendants, and were present at Rhome in Wise county, on December 13, 1884, when all of the defendants came together in a wagon, got out of it, and came to where the bale of cotton sold by D. A. Bridges to Rogers was lying in the yard. This was in the evening, and just after said Bridges had been discharged at an examining trial for the sale of this falsely packed bale. D. A. Bridges said that he sold that bale of cotton to W. J. Rogers, and George Bridges said he knew that the bale of cotton was all right, for he helped to pack it. Appellant Holden was present, and was near enough to hear what was said by D. A. and George Bridges; but the witnesses did not hear him say anything, and could not swear that he did hear what was said by the others. (This testimony was admitted over objection by the defense, and is the subject-matter of the second head-note.) The witnesses afterwards saw the bale taken into the house and opened. It was unmistakably a repacked bale. From appearances it had been "water-packed," and consequently had heated and rotted, and afterwards had been opened, dried, and repacked with the moats, trash, seed and rotten cotton stuffed into it. Heated cotton first turns yellow and rots, and then turns black.

W. J. Rogers, for the State, testified that he was not present when Bobo, his clerk, purchased the bale of cotton in question, but the purchase was reported by Bobo to him, and the books of witness also show that it was bought from D. A. Bridges. Three or four weeks after the purchase of the bale, it was sampled by R. T. Smith in making up a lot of cotton for shipment, and he, finding it false packed, rejected it. Witness wrote about the matter to the party for whom he was purchasing cotton, and received from him instructions to see Bridges and get him to pay back the money paid for the bale, or else to knock off the loss, which witness estimated at fifteen or sixteen dollars. Witness informed Bridges about the

matter, and proposed for him either to pay the loss or take back the bale and refund the purchase money. Bridges, saying that the cotton was all right, declined to do either, but promised to come in and see about the matter. Witness could not get Bridges to settle, and therefore had him arrested for selling false packed cotton. He was tried before a magistrate at Rhome on December 13, 1884, and was discharged by the magistrate. Witness, in order to set himself right, asked Messrs. Morris, Wilmuth, Chenoweth, Creswell, Bobo, Smith, and perhaps others, to go and see the bale opened. It was taken into a house and the hoops were taken off. The top and bottom of the bale contained cotton which graded " middling," and was worth eight and a quarter cents per pound. The inside was soiled, rotten and trashy cotton, mixed with seed and moats, and was of no value. Witness could not sell it for anything, as it was unmerchantable. The rotten cotton, moats, etc., before the bale was opened, could not be detected without digging into the bale. After the opening of the bale the witness had everybody arrested who he ascertained had anything to do with the packing of the bale. Witness did not ask any of the defendants to attend and witness the opening of the bale, but promised the man whom he considered the leader of them to show him the bale if he would wait a little while. That man, A. L. Keeter, went off before witness got ready to show him the bale. Witness could not say that any of the defendants had ever seen the bale since it was opened. The witness still had the cotton at Rhome.

A. Scoggins, for the State, testified that he knew the appellant and his co-defendants, and lived about three miles from Keeter's gin, and six from Rhome. On witness's place, in Wise county, D. A. Bridges made two bales of cotton in 1884. He had the first bale packed in September of that year, and the other about October 2d, ensuing. Witness did not personally know where they were packed. In October, 1884, Bridges hauled one of the bales to Fort Worth, but brought it back from there. Witness saw it after he brought it back, and noticed that two or three of the hoops were bursted off of it. Soon afterwards Bridges took the bale away, and a few days later he paid to witness the latter's part of the bale, which was one-fourth of the money proceeds of it. He said he had sold it at eight cents and a quarter per pound. Witness did not personally know to whom the bale was sold. When witness last saw the bale, after it was brought back from Fort Worth, it could not have been sold without repacking it.

Witness Phillips testified, for the State, that he was at Keeter's gin

when D. A. Bridges had repacked there a bale of cotton which had two or three of the hoops off of it. Witness helped to put it on the platform of the gin, and was told by Bridges that it had been rejected by the cotton buyers in Fort Worth, because they said it was water-packed. Witness saw the bale opened and about half of it repacked, when he was called off to attend to his team. Witness saw nothing wrong with the cotton, which, though somewhat trashy and not the best of cotton, was a fair average. Neither in the bale when it was opened, nor in the repacked bale, so far as he saw it, did he see any soiled or rotten cotton, or seed, or moats; but he did not notice it particularly. Witness saw the appellant and the other defendants there, helping about the packing, and after it was baled he saw Bridges haul it off on a wagon. This occurred about the middle of October, 1884.

A. C. Hill, for the State, testified that he was attorney for D. A. Bridges at the examining trial of the latter for selling a falsely packed bale of cotton. At that trial the appellant Holden was present, and testified, as a witness for Bridges, that he, Holden, helped pack the bale sold to Rogers. Witness did not distinctly remember what Holden's testimony was on that occasion.

Madden, a witness for the defense, swore that in October, 1884, he was employed by Keeter to gin for him. About the first of that month he ginned for D. A. Bridges, at Keeter's gin, a bale of cotton which, though somewhat trashy, was fair average cotton. A few days afterwards the bale was brought back by Bridges, who said it had been rejected in Fort Worth as water-packed cotton, and that he wanted it packed over again. When the bale was opened witness was called out by Bridges, who asked him what he thought of that cotton. Witness examined and found nothing wrong with it. He saw all of it except a small part last put into the press. He saw no soiled or rotten cotton, or seed or moats put into it. Appellant Holden was there, and helped put the bale on to the platform of the press. Since witness had come to court he heard Holden say that when the bale was opened he found in it a "matt" of wet cotton about as big as his hat, and that he took it out and threw it aside. The cotton witness examined was dry.

Brookshire, a witness for the defense, testified that he was at Keeter's gin when Bridges had a bale of cotton repacked there, and helped put the bale on to the platform. He saw the bale opened, and about half of it repacked. He noticed nothing wrong with the cotton, and considered it a fair average article. Witness saw nothing put into the press with the cotton. He had no interest in this case, and was kin to none of the parties.

A. L. Keeter, a brother of one of the defendants, testified that he was present when D. A. Bridges was tried and discharged on the accusation of selling falsely packed cotton to Rogers. After the trial witness and all the defendants went to see the bale of cotton. Chenoweth and Morris were there, and the bale was lying on the ground. Witness saw nothing wrong with it, but did not examine it closely. While he was there none of the defendants recognized that bale as the one packed at Keeter's gin. Witness did not hear D. A. Bridges say that it was the bale he sold to Rogers, but Bridges showed the bale as the one pointed out by Rogers as the bale bought by him from Bridges. Witness left there before the crowd did, and was positive that none of the defendants identified the bale while he was there. He did not hear the appellant Holden say anything. Cotton ginned at Keeter's gin was usually marked with the owner's initials in blue ink.

Matthews, a witness for the defense, swore that in October, 1884, he went to Fort Worth with D. A. Bridges, who took on his wagon a bale of his own cotton and a bale for witness. At Fort Worth Bridges contracted his cotton at eight and a half cents per pound. The cotton men had it moved to their yard, and refused to take it on account of it being water-packed. They bored into a number of places on the top and bottom of the bale, and found wet cotton for several inches in the interior. They found no seed or moats or rotten cotton, and nothing was wrong except the wet cotton. They proposed to take the cotton if Bridges would knock forty pounds off of the weight, but he refused to knock off anything, and said he would take it back to the gin. He did bring it back, but witness did not personally know what became of it.

As will be seen by the opinion there were several defendants in the case, but a severance was granted, and appellant was put upon his trial, with the result already stated.

*D. A. Holman,* for the appellant. The court erred in overruling the motion of defendant to quash the information and complaint herein for causes therein assigned, as follows, to wit, substantially:

I. The same is vague, indefinite and uncertain in this, to wit:

1st. It charges defendant, and four others, with falsely packing the bale of cotton, with intent to defraud.

2d. By additional averment in the same count conjointly, it charges that D. A. Bridges sold said bale, with intent to defraud.

Thus combining two distinct offenses in the same count without showing, 1st. Which of the two offenses defendant is called on to

answer. 2d. Without averring with sufficient certainty any complicity on the part of other defendants in the charge against Bridges. 3d. Without showing which of the two attempted charges is against the peace and dignity of the State.

II. The same joins two distinct offenses in the same count, one of which is against five defendants, and the other is against one of them only; but it includes both against all, and so included presents no offense against the laws of this State; and is defective for duplicity, and imposes inconvenience and prejudices the rights of defendants in making their several defenses.

An information which charges two distinct offenses in one count is vague, indefinite and uncertain; does not set forth the offense in plain and intelligible words; and must be quashed by the court on motion for duplicity. (*Weatherby* v. *The State*, 1 Texas Ct. App., 645; 1 Bishop Crim. Proc., § 432; *Beaumont* v. *The State*, 1 Texas Ct. App., 537; *The State* v. *Edmonson*, 43 Texas, 165; *Henderson* v. *The State*, 2 Texas Ct. App., 89; *Fisher* v. *The State*, 33 Texas, 792; *The State* v. *Nations*, 31 Texas, 563; *Lewellen* v. *The State*, 18 Texas, 538; 1 Bishop Crim. Proc., § 428.)

The court erred in quashing that part of the information which related to the selling of the cotton to Rogers by defendant Bridges.

1st. Because it was an amendment of said information in matter of substance, and made the said information charge a different offense from that which it originally attempted to charge. The law could not view both offenses, as charged, as one transaction, or one connected charge, and constituting but one offense; if taken together, they constitute no offense; strike out the latter and the first will be valid, and makes the change substantial. (Code Crim. Proc., art. 550.)

2d. Because the same was double, uniting two distinct offenses in one count, to wit, the "false packing with intent to defraud," and the "selling with intent to defraud," and should have been quashed *in toto*. Duplicity in an information or indictment is fatal, and cannot be cured by amendment, but must on motion be quashed. (Code Crim. Proc., arts. 430–37; *Collins* v. *The State*, 6 Texas Ct. App., 647; *Robbins* v. *The State*, 9 Texas Ct. App., 668; *Calvin* v. *The State*, 25 Texas, 794; *Sanders* v. *The State*, 26 Texas, 119; *Sharp* v. *The State*, 6 Texas Ct. App., 650; *Drummond* v. *The State*, 4 Texas Ct. App., 150; *Townsend* v. *The State*, 5 Texas Ct. App., 574; 1 Bish. Crim. Proc., § 432.)

3d. Because the said information so reformed and amended is variant from the offense charged in the complaint.

4th. Because the information so reformed and amended is not

supported by or based upon any corresponding affidavit on file in said cause.

The court has no right to amend or permit any one else to amend the affidavit; and the information must be based upon the affidavit; and the offense charged therein must be characterized by and correspond with that stated in the affidavit. (Code Crim. Proc., art. 431; *Davis* v. *The State*, 2 Texas Ct. App., 186; *Patillo* v. *The State*, 3 Texas Ct. App., 442; 3 Id., 36 and 551; *Wilson* v. *The State*, 6 Texas Ct. App., 158; *Stinson* v. *The State*, 5 Texas Ct. App., 31; *Williamson* v. *The State*, 5 Texas Ct. App., 486.)

No amendment can be made in an information in any matter of substance, or that does not leave the prosecution, commenced by the State, the same as to defendant and offense charged as originally charged in the complaint. (Code Crim. Proc., art. 550; *Wilson* v. *The State*, 6 Texas Ct. App., 154.)

The court erred in overruling defendant's objections and admitting the evidence of witnesses Morris and Chenoweth, as shown in defendant's bill of exceptions, as follows:

"That on the evening of the 13th of December, 1884, after defendant Bridges had been acquitted on examining trial at Rhome, Wise county, Texas, that they, witnesses Morris and Chenoweth, and others, were present at the bale of cotton alleged to be fraudulently packed, and that in their presence said D. A. Bridges admitted that he sold that bale of cotton to Rogers, and George Bridges said he knew that that bale of cotton was all right, for he packed it and knew it was all right; that defendant Holden was present; don't know that Holden heard it; did not hear him say anything." To which defendant objected, because

1st. No predicate was laid by showing that the bale sold by Bridges to Rogers was fraudulently packed by defendant.

2d. Proof of having acted together in the commission of an offense on the 20th of October, 1884, cannot be made by the admissions of one of the defendants made after the offense was completed, to wit, on 13th of December, 1884.

3d. Because the defendant cannot be bound by the declarations or admissions of another made in his presence, without proof that it was spoken to him; that he heard the words spoken, under such circumstances as made it his duty to speak, and with full knowledge of the facts. And because at the time, Bridges, who had alone been charged with this offense, had been acquitted, and no complaint was then pending against Holden, and he was not bound to speak. The court overruled the objections and admitted the testimony, which is here assigned for error.

To make the admission of D. A. Bridges, to wit, that he sold that bale (meaning the one at Rhome) to Rogers, and the admission of George Bridges, to wit, that he packed that bale (meaning the one at Rhome), binding and admissible as evidence against defendant Holden, there must be legal evidence connecting Holden with the false packing of that bale of cotton, as a principal, independent of the declarations of any of his co-defendants made after the fact.

The *corpus delicti*, i. e., the false packing of *that bale* of cotton, and that defendant acted together with the Bridges, pursuant to a common unlawful intent, or aided and abetted them to commit the offense, knowing of their unlawful intent, must be proved by competent corroborating testimony before their declarations are admissible against Holden.

Their admissions are the only testimony identifying the bale found false-packed at Rhome, with the bale packed by all of the defendants at Keeter's gin. There is no other evidence tending to show that the bale packed at Keeter's was the bale found false-packed at Rhome. There is no evidence showing that defendant acted together with the Bridges in falsely packing cotton, knowing of their unlawful intent. There is no evidence showing that the bale packed at Keeter's by defendants was falsely packed, but it is absolutely and unqualifiedly negatived by Phillips, the only witness who testifies on that subject for the State, and who is corroborated by the ginner, Madden, and by a disinterested farmer of the neighborhood, Brookshire.

Strike out these admissions, and the testimony shows that in October, 1884, the defendants packed a bale of cotton for Bridges at Keeter's gin, that was all right, and not false packed. Shortly after that time Bridges sold a bale to Rogers; that after it laid in the cotton yard, among other cotton, on the ground for three or four weeks without special watch, the bale recognized as the same bale was discovered to be of less value than the outside sample, and therefore rejected. On the 13th of December, 1884, it was opened and found false packed. (*Myers* v. *The State*, 6 Texas Ct. App., 1; *Ake* v. *The State*, 30 Texas, 466; *Jones* v. *The State*, 13 Texas, 168; *Wright* v. *The State*, 43 Texas, 170; 50 Miss., 147; 40 Penn., 9; 10 Pick., 497.)

To make such admissions competent evidence against Holden, they must be admissible to prove the main fact, and if incompetent to prove the main fact, they are equally inadmissible to prove a collateral fact upon which depends the establishment of the main fact. The main fact is the false packing of cotton by defendants. This

cannot be proved by the uncorroborated admissions of one or more of the defendants against the others made two months after the completion or abandonment of the unlawful purpose. The proof of the main fact hinges upon the identification of the bale at Rhome as the same bale packed by defendants at Keeter's. The proof of this collateral fact rests solely in the admissions of the Bridges. (*Haynes* v. *The State*, 2 Texas Ct. App., 174, and Id., 588; *Taylor* v. *The State*, 3 Texas Ct. App., 396; *Marshall* v. *The State*, 5 Texas Ct. App., 293; *Shrivers* v. *The State*, 7 Texas Ct. App., 455.)

To make such declarations binding on the defendant they must be made as *res gestœ*, pursuant to and in furtherance of the common design, and not after the completion or abandonment of the unlawful purpose. The defendants packed a bale on or before the 20th of October, 1884, at Keeter's gin. This admission is made 13th of December, 1884, at Rhome, eight miles distant. No common design or acting together in an unlawful purpose is shown. No prosecution was then pending; no opening of the bale or exhibition of its contents, and no knowledge of facts fastened on the defendant Holden. (*Simms* v. *The State*, 10 Texas Ct. App., 160; *Allen* v. *The State*, 8 Texas Ct. App., 68; *Preston* v. *The State*, 4 Texas Ct. App., 196; *Phillips* v. *The State*, 6 Texas Ct. App., 383; 1 Greenl. Evid., §§ 111 and 233; *Porter* v. *The State*, 43 Texas, 367; *Loggins* v. *The State*, 8 Texas Ct. App., 444.)

The admission of this testimony was erroneous, and the conviction cannot stand even if it were certain that the jury would have found the defendant guilty upon other evidence in the cause. (*Mc-Williams* v. *The State*, 44 Texas, 117; *Haynes* v. *The State*, 2 Texas Ct. App., 475; *Draper* v. *The State*, 22 Texas, 400; *Bigby* v. *The State*, 5 Texas Ct. App., 102; *Cox* v. *The State*, 8 Texas Ct. App., 297; *Simms* v. *The State*, 10 Texas Ct. App., 161.)

The court erred in giving the charge of the court, because it does not cover the law of the case.

1st. It fails to show under what circumstances the admissions and declarations of one person may become evidence against another as to the commission of a common offense, to wit, when made at the time, or so soon thereafter as to constitute a part of the *res gestœ* of the case, and in furtherance of the common design.

2d. It fails to show under what circumstances they will not bind, to wit, after the completion or abandonment of the joint unlawful undertaking; both of which errors were sought to be remedied by defendant's charge No. 5, refused by the court, as follows, to wit:

"To warrant you in finding the defendant Holden guilty upon

any of the acts, declarations or admissions of Bridges, or others charged with him as principals, you must find from the evidence that the acts must have been done, or declarations and words spoken at the time, or so soon thereafter as to constitute a part of the transaction for which he is charged, and in furtherance of the common design or purpose.

"You will not consider any act done, or any declaration made, or word spoken, by either of the other defendants, on the trial (of Holden), that was done or said after the false packing with intent to defraud was completed or abandoned, if you should so believe from the evidence, and especially if the words spoken were narrative of a past transaction."

In view of the evidence the jury were left uninstructed as to when and under what circumstances one person may be bound by his own silence and acquiescence in the admissions or declarations of another made in his presence; and when and under what circumstances he would not be bound, which errors were sought to be remedied by defendant's charge No. 6, refused by the court, which was as follows, to wit:

"To warrant you in binding the defendant by declarations made by Bridges, or others in his presence, you must believe from the evidence that such declaration was made under circumstances where, 1st, you can have no reasonable doubt but what defendant heard them; 2d, that the defendant agreed to what was said, or said nothing, thereby acquiescing in the same; 3d, that it was said at a time and under such circumstances as made it the duty of defendant to speak; that would make it a fraud upon others for him not to speak; and estop him from afterwards disputing the truth of what was said; 4th, to thus estop defendant it must be shown that, at the time of such declaration, it was made with full knowledge of the facts.

"If you should further find that at the time the bale had not been opened (unless you find from the evidence that both Bridges and defendant knew what was concealed in the bale, and if you have a reasonable doubt as to this, you must acquit as to this issue), then neither are estopped thereby; nor can defendant be bound thereby.

"And if you should further find that, at the time such declaration was made, that Bridges had just been tried and acquitted by the magistrate's court of this same charge, and that at the time no further complaint or prosecution was commenced against any of the defendants, then the defendant Holden was not bound to speak, and

could not be bound by any such declaration made by Bridges or other co-defendant; and if you so find, you will not consider any admission of Bridges or other co-defendant so made as against Holden, now on trial."

Admissions may be implied from the acquiescence of the party; but to have that effect it must exhibit some act of the mind and amount to voluntary demeanor of the party; and whether it is acquiescence in the conduct or in language of another it must plainly appear that such conduct was fully known or the language fully understood by the party before any inference can be drawn from his passiveness or silence.

The circumstances, too, must be not only such as afforded him an opportunity to speak or act, but such as would properly and naturally call for some action or reply from men similarly situated. (*Ingle* v. *The State*, 1 Texas Ct. App., 310; 1 Greenl. Evid., sec. 197.)

We submit that the judgment should be reversed and a new trial awarded :—

1st. Because of the admission over objection of defendant of the testimony of Morris and Chenoweth. It was utterly incompetent as against Holden, and without it no case was made out against him.

2d. Because of the refusal of the court to give the charges requested by defendant; without them, the jury were left uninstructed as to the material issues involved, and they were both correct as abstract propositions of law, and applicable to and required by the facts in evidence.

3d. Because the verdict is unsupported by and contrary to the evidence. There was no evidence of conspiracy to do any unlawful act. There is no competent evidence that defendant Holden packed the bale of cotton found false packed at Rhome; or that he acted together with others so to do, knowing of their unlawful intent. There is no competent evidence that the bale packed at Keeter's was the same as the one opened at Rhome. On the contrary the proof shows positively, by the State witnesses and without contradiction, the reverse. If so, the conclusion is irresistible that it was not the same bale.

We submit further, that the information should have been quashed for, 1st, duplicity. It unites two distinct offenses against different persons in one and the same count. The law cannot construe it as one continued transaction, and out of it make one offense; for, taken together, no such offense is known to the law. " No matters however multifarious will operate to make a declaration or information

double," says Wait, J., "provided that all taken together constituted but one connected charge or one transaction." "And provided also," says Bishop, § 438, 1 Code Crim. Proc., "that in any view which the law will take of the one transaction it may be regarded as constituting but one offense."

The "selling" can form no part of the offense of "false packing," and therefore cannot be regarded as surplusage. Bishop lays down the rule, "If indictment is founded on statute and it contains allegations covering all the terms of the statute and making a complete offense; then, if it adds something by way of making the offense appear more enormous, this latter may be disregarded as mere surplusage." (1 Bish. on Criminal Pros., § 479.) Or "if an indictment describes one offense and then adds such words only as are, in part, sufficient to describe another, it is not therefore double." (Id., § 440.)

This is aptly illustrated in *Pickett* v. *The State*, 10 Texas Ct. App., 290. The indictment charged "did then and there go into a public assembly, to wit: a public convention where persons then and there assembled, and did then and there have and carry about his person a pistol." The court treated all that was said about the assembly as surplusage and struck it out. It does not in part charge any offense by going to a public assembly. And Bishop gives the rule that "to make it so (double) it must set out each of the two offenses in adequate terms." The information in this case sets out the two offenses in the exact language of the statute, alleging "with intent to defraud" as to each.

In *Coffee* v. *The State*, 41 Texas, 47, the court below quashed the indictment because it charged two separate and distinct offenses; one an aggravated assault, and the other for resisting an officer in the lawful discharge of the duties of his office. The court required the district attorney to elect which he would prosecute, and he declining the first, the court quashed the indictment on motion, 1st, for duplicity; 2d, because it did not show that defendant was attempting to execute a lawful warrant of arrest. The supreme court held that it was not double; the charge of "resisting an officer in the lawful discharge of the duties of his office" was "inadequately" framed to charge the defendant with "resisting process," and viewed as one transaction or connected charge it was sufficient only to charge an assault, the same becoming aggravated by additional averments showing that it was upon an officer in the discharge of his official duties; and the case was reversed.

In *Rutherford* v. *The State*, 13 Texas, 25, there were two counts.

The second count charged "an assault with intent to kill and man-slaughter." It was quashed on motion, because there was no such offense known to the law of this State.

So in this case, there is no such offense known to the law of this State as " with intent to defraud, falsely packing cotton," and " then and there selling the same with intent to defraud." Nor can it be remedied by the court's quashing a part of the information; for that is fatal to the prosecution by producing a fatal variance between the information and the affidavit upon which it is based.

If viewed as two substantial offenses improperly joined, the court might compel the State to elect upon which it would proceed; but cannot arbitrarily quash one and compel the State to prosecute, and the defendant to defend, whichever one the court might see fit to elect. But the court was not called on to require the State to elect; no election was made, and the defendant had a right to expect pro-tection, by the court, under the legal presumption of innocence, against all illegal proceedings where every step in the prosecution is an attack upon the liberties of the presumedly innocent.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge. It is provided by the article of the Penal Code upon which the information and complaint in this case are based, that "If any person shall, with intent to defraud, put into any hogshead, barrel, cask or keg, or into any bale, box or package, containing merchandise or other commodity usually sold by weight, any article whatever of less value than the merchandise with which such bale, box, package, hogshead, barrel, cask or keg is apparently filled, or with intent to defraud shall sell or barter, give in payment or expose to sale, or ship for exportation any such hogshead, barrel, cask, keg, box, bale or package of merchandise or other commodity, with any such article of inferior value concealed therein, he shall be punished by confinement in the county jail not exceeding one year, or by fine not exceeding $1,000." (Penal Code, art. 470.)

As stated both in the complaint and information, the charge pre-ferred is that " D. A. Bridges, George Bridges, W. W. Keeter, C. F. Holbert and J. F. Holden, on or about the 20th day of October in the year of our Lord one thousand eight hundred and eighty-four, with force and arms, in the county and State aforesaid, did, with intent to defraud, put into a bale containing cotton, a commodity usually sold by weight, soiled and rotten cotton, and moats and trash mixed with cotton, the same being then and there articles of

less value than the cotton with which said bale was apparently filled; *and that the said D. A. Bridges did then and there sell and dispose of said bale to W. J. Rogers, with the said soiled and rotten cotton and moats and trash mixed with cotton, as aforesaid, concealed therein,* with intent then and there to defraud; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State." (Italics ours.)

A motion was made by defendant (he being alone on trial after severance had) to quash the information upon several grounds, only one of which need be noticed. It is said that the information is vague, indefinite, duplicitous and uncertain; that it charges two offenses in one count, the first of which is a joint offense committed by several parties, and the latter a single, separate and distinct offense committed by one of said parties, without any allegation of complicity in the same upon the part of the other defendants. This motion to quash was sustained by the court in so far as the information charged D. A. Bridges with the offense of selling a bale of cotton falsely packed, with intent to defraud, and was overruled as to the balance or other portions of the information.

This ruling of the court was correct. That portion of the information which the court quashed (and which is shown by the italicised portion above noted) can very properly be stricken out and eliminated from the information as mere surplusage, and the remaining portions charge sufficiently and fully one of the offenses denounced by the statute. The italicised portion is not essential to the description of the offense of "false packing," which is an offense within itself. It will be noticed that two offenses are denounced by the statute; the one, to falsely pack with intent to defraud; the other, to sell the falsely packed article with intent to defraud. "Intent to defraud" is the particular intent in either case, and, whilst it is essential that such particular intent must be alleged in charging both or either offense, it was not necessary, nor is it necessary in any such case, to name the party intended to be defrauded. (Code Crim. Proc., art. 423; *Morris* v. *The State*, 13 Texas Ct. App., 65.)

It is clear, then, that the averments are divisible and that there is nothing in the italicised portion of the information which was essential to the charge of false packing, and furthermore it is evident that the charge of false packing is complete without the italicised words or any of them. If so, these latter can appropriately be treated as surplusage, and under well established rules be expunged or held for naught, without detriment to the remaining portion of the information or indictment. (*Warrington* v. *The State*,

1 Texas Ct. App., 168; *Mayo* v. *The State*, 7 Texas Ct. App., 342; *Gibson* v. *The State*, 17 Texas Ct. App., 574; *The King* v. *Hollingsberry*, 2 Leading Crim. Cases, Bennett & Heard (2d ed.), p. 34, and note.)

Defendant's first bill of exceptions was as to the admission in evidence, over his objection, of the declarations of D. A. Bridges, a co-defendant, made after he, Bridges, had sold the bale of cotton to Rogers, and nearly two months after it had been packed. The declarations objected to were admissions by D. A. Bridges that the bale of cotton in which the rotten cotton, trash, moats, etc., were found, as testified on this trial by the State's witnesses, was the identical bale which Bridges had sold to Rogers. It is contended that this evidence was inadmissible because it was an admission by a co-conspirator, after the consummation of the criminal act constituting the conspiracy, and could not be admitted against, nor was it binding upon any one but the party himself making it. There can be no question as to the correctness of the rule invoked, viz., that confessions, admissions or declarations made by one of several persons who were confederated in an unlawful enterprise, if made after its consummation, are not evidence against the others, without their acquiescence in them. (*Allen* v. *The State*, 8 Texas Ct. App., 67; *Cox et als.* v. *The State*, 8 Texas Ct. App., 256; *Simms* v. *The State*, 10 Texas Ct. App., 131.)

In this case it is proven that the admission was made in the presence of defendant, and that he was close enough to have heard it. If that was so, and the admission or declaration was heard by him, unless he at the time repudiated it, it would bind him even though made after the conspiracy was consummated. In this case the admission of Bridges was that he had sold the bale to Rogers, which bale was afterwards found to be falsely packed. Now, we might strike out this admission of Bridges entirely and there is ample evidence in the record that positively identifies the bale as the one sold by Bridges to Rogers. But, as stated above, the admission was made in the presence and hearing of this defendant. Defendant had gone there with the others to see about and talk about this bale of cotton. He was close enough to have heard what was said and he said nothing. Under such a state of case the evidence was admissible, and it may well be inferred that he did hear it; and the evidence was admissible against him even though at that time he had not as yet been charged with or prosecuted for complicity in the crime. (*Long* v. *The State*, 13 Texas Ct. App., 211; 2 Whart. Evid. (2d ed.), § 1136.)

As to the sufficiency of the evidence establishing his complicity

in the crime, several witnesses testify that he was present and aided in packing the bale of cotton, and the witness Hill testified that he "was attorney for D. A. Bridges on his trial at Aurora for selling W. J. Rogers a bale of cotton falsely packed. Defendant was present as a witness for defendant Bridges, and testified to helping pack the bale sold to Rogers," etc. Now, if he was present and helped pack the bale, he could not but know that it was falsely packed, and knowing that and aiding in it made him a principal offender in the crime committed.

The charge given to the jury presented the law, and we cannot see that it was error to refuse the requested instructions. The judgment is affirmed.

*Affirmed.*

[Opinion delivered April 25, 1885.]